Thank you Judge Berzon. May it please the court, I'm Scott Stewart on behalf of the United States. If I may Judge Berzon, I'd like to save four minutes for rebuttal. In this case, the district court issued sweeping class-wide injunctive relief based on its view that class certification was proper and that ICE's nationwide response to COVID-19 in its detention facilities violated federal law. The district court was wrong on both matters. This court should vacate the preliminary injunction. Counsel, before you go further, could you just clarify what order it is that you're asking us to review? Because you've now filed a separate notice of appeal from the October order. So are we looking at just the April order or the April order as clarified in October or what is it? Just the April order, Your Honor, which I believe are dockets 132 and 133. We have filed a notice of order from that later enforcement order, but that is not an issue at this present time. The current order and the current record for the world of 2020 kind of feels like and we have a more modern history. Wouldn't it make more sense to expedite the other appeal? And hear the two of them together in early February and get the whole thing in one place at one time, rather than this ancient agreement and a much more limited injunction than what ultimately, and that was ultimately clarified. This is sort of what happened in the Roman Kings, but this is in spades, even more so. I don't know. Go ahead. I want to be a little bit careful, Your Honor, because my understanding is the decision has not been made within the federal government as to how to proceed on that second order. I do think though. It's an appeal. We filed a protective notice of appeal, Your Honor, that doesn't necessarily. Fine. As far as our court's concerned, here's an appeal. And there's a briefing order is my understanding as well. Correct, Your Honor. My hope is that a decision will be made soon and we'll be able to advise the court how we propose to proceed on that. I would say, Your Honor, though, the later order obviously depends in central and meaningful ways on this original order. This is the order that issued the class certification and the merits issues on which the later order of course necessarily depends. So I think resolution of those issues would certainly, at the very least, I would think, very likely meaningfully shape, if not do more, frankly, with respect to any appeal from the more recent enforcement order. But again. I mean, if the April order hypothetically is invalid, isn't it, doesn't it follow that the October order, which is premised on the April order, can't stand either? I think that's right, Judge Brass. And I think again, that's another reason why the court can decide this appeal. And because again, it could be as fully resolved as Your Honor mentions. At the very least, it could significantly shape the second appeal. But again, my hope is that we can offer more guidance. But I think that's exactly right in all the reason to proceed full speed ahead with resolution of this appeal, Your Honor. And what is it now on December 9th that the April order is requiring you to do that you would not otherwise be doing under your own policies? Sure, Your Honor. I mean, I think, you know, adopting the more mandatory performance standard that the district court mandated is one. The district court in its more recent order has, I'd say, at the very least, pressed ICE meaningfully harder on release and really put ICE into a very much stronger release, presumptive release posture in some cases. But the question is whether the existing order that's before us now, what does it mean about order that isn't in one thing? Well, I mean, again, Your Honor. What's the anomaly here? You're saying, well, there's really nothing, especially if you weren't doing it in April. Are you doing it now? Your Honor, it directed us in the April order to adopt this performance standard and to do all these other things. And I think one very significant feature here, Your Honor, is that we are under a court ordered injunction. And whenever you're under that, it's something that requires you to work around the clock to do a bunch of affirmative compliance or if it's more limited, it's a very rough place to be. And as we've made clear, that order's resting on significant errors. So whatever the extent is of what it's requiring from us, we are constantly under court supervision in a detention context backed by... I'm sorry, Your Honor, I missed that question. Why are there significant errors with regard to... Sure, Your Honor. I'd like to make sure to emphasize the key errors both on certification and on the merits of the injunction in particular. The merits issues here, the Due Process and Rehabilitation Act issues, call for highly individualized, fact-specific, granular analyses. And that's borne out by the plaintiff's own effort and the district court's own reliance on extensive anecdotal or largely on anecdotal evidence to fault the government's response. The problem is this is a challenge to system-wide national policies. And this is just exactly what the Supreme Court was improper in Wal-Mart, where you're attacking a policy, but you're basing it on particular... Wal-Mart was not a B2 class action. I apologize, Your Honor, I couldn't hear that question. Wal-Mart was not a B2 class action directed at a set of policies, correcting a set of policies. It was a B3 class action, and that was the problem. It was a B2 class action, Your Honor. I think Justice Ginsburg, I think, had some issues about the B2 versus B3 analysis. But the problem here, Your Honor, is that you cannot resolve the propriety of ICE's response in this very fluid context in one stroke. You don't have the common issue. You have a policy, and you have to look to individual facilities to find any faults with that policy. A facility that has 70 percent capacity versus 30 percent capacity is going to be very different. Facilities with community transmission versus none. A facility with confirmed cases versus none. A facility in an area where the region lacks PPE is contemplated in some cases under the CDC guidance versus a place that has plenty of PPE. The ability of what these individual facilities can do on a person-by-person basis in the particular conditions there are not going to be able to inform the bigger question. Can I ask, on the point you just made, what would you point to in the record to show that there is, in fact, significant variation around the country among facilities on the points you just identified? I mean, Your Honor, I'd have to go look at some of the issues of structure, but I think there's not really any dispute that some facilities have large numbers of folks, some have smaller. The guidance itself, an issue here is recognizing there will be shortages potentially in some places. You might have community transmission in some places and not in others. It could inform some things maybe with respect to screening. I mean, Your Honor, it's the affirmative burden of the folks moving for class certification to meet these. As Walmart emphasizes, you have to affirmatively satisfy that rigorous analysis. It's not just a pleading standard and it is plaintiff's burden here. The problem here is that fundamental failure to make that showing. The plaintiff's claim to attack a national policy, if that's their claim, they cannot rely on these individualized anecdotes, but that's what they do and that's what they need to fault our policy. That is fundamentally the problem here. The argument is that the local situation and we don't know anything about the local situation. There's no way you can prove that up. So it's not that the local situations are the subject of the injunction. The local situations are evidence as to why it is that when you get to the merits, there's a problem with and that needs to be cured by a national injunction, not by a set of local terminations. That's not right, Your Honor. I mean, if that were the case, then Walmart would have come out a different way. I mean, there were a lot of anecdotes in the case. The problem in Walmart was that the policy was a non-policy. I mean, the whole problem in Walmart, as I understood it, was that the assertive policy was that they didn't have a policy. No, Your Honor, the policy there were two main points that the Supreme Court made about that policy. The first was that Walmart had an affirmative policy against sex discrimination. The other policy was the policy of giving discretion in hiring and payment type decisions. And the problem was, Your Honor, is that you couldn't solve that question without delving deeper into these individualized decisions. And those individualized decisions just could not support in one stroke the invalidity of the Supreme Court. Now, the district court here, what it did, Your Honor, was the thing that Justice Ginsburg endorsed on commonality and dissent that was squarely rejected by the Supreme Court. It's not just a general issue when you have these issues that really depend on what's going on in different places. Like, you can't just look and see, like, oh, this person doesn't have a mask, or there's a little bit of tightness in the distancing. But that is until we leave that place not to give anybody a mask. But, Your Honor, it's... To have a policy regarding, an enforceable policy regarding masks. But, Your Honor, that's what we have. And this actually gets to another point. I mean, again, first of all, the district court relied on that anecdotal information to find faults with the policy. But really, and this is a point on, really, I want to emphasize on the merits, Your Honor, is that the district court didn't really even operate a key policy. That's the April 10th pandemic response requirements. And they cover all the key issues. I mean, they cover information, communication, staffing, supplies, hygiene, cleaning, disinfecting, visitation, transfer, social distancing, custody review, new entrance, transfers, prevention, handling confirmed suspected cases. Right. You have a policy, and the ultimate conclusion is the policy is an inadequate policy. So, he's operating on an actual existing policy and saying it's not a good enough policy. What does that have to do with the class action issue? Because, well, first of all, Your Honor, I mean, if that is truly the claim, then you need to evaluate the face of the policy. Again, this is a claim about the lack of adequate standards. So, you evaluate the face of the policy. You can't attack the policy by looking at based mainly about 14 facilities in six states. How else can you do it to demonstrate that there's a problem that needs fixing and justifies the injunction? Well, Your Honor, I think this gets to a fundamental premise that's a problem here, is that just because somebody wants to bring a sweeping, sprawling nationwide class doesn't mean that option's available to them. They may have other options, individual suits. Many folks have brought facility-wide challenges. Roman was itself a facility-wide challenge. That could narrow the issues and the individual, you could get something closer to defensibility there on class action. There may still be issues, but the problem here, Your Honor, is that we have 250 or so or more facilities, and you have all different constructions and ways that the facilities have to act and adapt, and you just can't look at anecdotes and handfuls of cherry-picked information to say, hey, this policy that on its face addresses all of this stuff, that adopts and makes mandatory the CDC guidance, is invalid. That's the fundamental problem that pervades both class certification, Your Honor, and the merits, and that's the key point. And I think what I'd emphasize, Your Honor, also is that, again, the PRR, the pandemic response requirements, that's the key document. The district court just barely evaluated that. It mostly, it has seven pages going for the cherry-picked anecdotes, and it has about a page and a half pointing out criticisms of the actual systemic policy. This is in the background section. And, again, it's just those criticisms, they rely largely on a declaration that preceded the PRR. They barely even mention the PRR. It's not even clear, I think, that they really address them even there, but the PRR on its face, it addresses all of this stuff. There's no way just... And how can you say something like that addresses an inadequate? You're questioning why it's been wrong to them. But, well, first of all, are we now off to class action? Because, I mean, the more you argue about the fact that you have an adequate national policy, and he says you have an inadequate national policy, demonstrates to me that there is a common question as to the adequacy of the national policy. And I don't... For them, it's a matter of whether that's... Can I emphasize the issue there? Here's the problem. You can't bring a facial challenge for purposes of class certification and then make it an as-applied cherry-picked challenge for purposes of the merits. That's not permissible. So, at the very least, class certification has to be vastly narrowed to focus on the actual policy. And even if all the court endorsed were looking at the actual face of the policy and not relying on all the cherry-picked random anecdotes, Your Honor, the court... There would still be significant class certification issues. There are different legal standards across circuits on a number of the merits claims here, for one thing. And another claim, Your Honor, you can't really look at this policy and without looking at the anecdotes and say the policy is wrong. It's just like in Walmart, where you have a policy that says no discrimination and discretion. You have to go deeper than that to fault the policy, and so you can't even get that here. So that knocks out class certification, and similar problems pervade the merits, Your Honor. Once this merits issue is properly understood, ICE's response is thorough. There's no reasonable way to say that ICE has been deliberately indifferent, that it's been punitive, that it's violated the Rehabilitation Act when it has adopted and made mandatory the CDC guidance, when it has identified risk factors, and when it's taking all of these affirmative steps to address these things. I see I'm running up against four minutes, Your Honor. If I may, I'd like to save time for rebuttal. That's fine. Thank you, Mr. Goldman. Thank you, Your Honor. Thank you. Good afternoon, and may it please the court, Brian Goldman for the plaintiffs. I'd like to start where Judges Berzon and Miller did, which is noting just that there is a very artificial quality to this appeal, because we're talking about whether on this record the district court abused its discretion back in April, but an awful lot has happened since then. And so I'll try to address both time frames, but I agree with my friend on the other side that the only scope of this appeal right now is up through April. But just to be very clear, the reason that this case has overtaken by events is because of how ICE has chosen to litigate it. ICE waited as long as it could, two months, to file the notice of appeal in this case, and it hasn't otherwise acted with any urgency, which is why this case is being argued three months after Roman v. Wolf, even though the injunction here actually predated that one by a few days. I mean, that is their decision. They're entitled to proceed as they want to. The ultimate question here is, to me, is how can the district court conclude on a class-wide basis that ICE has shown reckless disregard? I mean, the difficulty I have with the claim you're making is that this is a monster-type allegation. It's very different from Roman or a case where someone alleging deliberate indifference is the one facility. The allegation here is that at a system-wide level across the entire country, 250 facilities, thousands of people, and the allegation is not one of sort of negligence or if they could have done better, but it's actually quite a high standard of deliberate indifference. It seems to me you have both a difficult legal standard on the merits and a difficult path under class certification. You're asking for both. I just think it's a very ambitious lawsuit. Well, I hope to address both parts of that, Judge Brass, and I think the comparison to Roman in many ways is an instructive one because I think this case is both broader and shallower than Roman and I think that makes all the difference. So the key here and the main response that I have to the argument of my friend on the other side is that what the district court ordered here, if you actually look at the terms of the injunction at pages ER 41 and 42, they are quite modest. The court was not directing specific interventions as to any person or any facility. The court was saying, I am going to look at what ICE itself is holding out as system-wide policies with respect to custody determinations and the docket review guidance and with respect to its policies that ICE itself has are inadequate, but I am going to prescribe adjustments that build on what ICE has had, not trying to displace them, to just move them inside constitutional guardrails. And that's much less significant than the kind of relief in Roman, which actually was directing the release of individuals and was prescribing specific interventions, not just for those at high risk, but for everybody in the facility. So I think there's that inverse relationship between breadth and depth, and that makes sense given the scale of the claim. May I ask you to address the following concern about class certification? So to establish commonality, you're saying that there's this common policy from Washington, D.C. that affects everyone, but there's sort of a disconnect between that and your constitutional claim, because it's and if a plaintiff is at a facility that happens to have good ventilation and distancing and sanitation, he's not being exposed to an unreasonable risk. So to establish the violation, you need to look at the actual facts on the ground in each facility, but that's not common across the country. So how would you address that? Sure. So I think the key point is that the risk is in many ways that the merits of the constitutional claim are not constrained by what is actually happening on the ground. And just to be clear, this argument is not a bottom-up, let's extrapolate from a series of anecdotes to find an invalid policy. It's our experts who are experts in health care systems, in detention settings, looked at these policies and pointed out why they are invalid at a system-wide level, because there are things that are going to affect everybody. The fact that ICE had no policy for how to prevent infection of high-risk people in particular, or even identifying who they are and who needs... How you can point, you can argue, reckless disregard or deliberate indifference in the face of the April document that was issued shortly before the injunction was issued. We could go through that and flyspeck it, maybe experts could point to things in it, but at the end of the day, that's not the standard. And so I think you need to address that April document in some detail and explain where it is not just falling short, but where it actually reflects deliberate indifference. Sure. So I agree that the April document is the relevant one. I think the district court was also entitled to look at the delayed response that preceded it and say, given ICE's history of not actually demanding compliance with its policies, that I can't just take this at face value. And given the evidence that we submitted after the PRR was implemented, which is the first roughly 120 pages of the supplemental... Mr. Goldman, I seem to have off this zoom in terms of being able to see or be seen. And I'd like to come back and figure out how to do that. I cannot do it at the moment. So I'm going to start over. Oh, there I am. Okay. Please go. Sure. Sure. So I say that just by way of preface, but even to look at the PRR itself, what the district court found was that even the PRR still fell short along the four dimensions that the court was focused on. So those were identifying people with risk factors, providing for special precautions to keep them safe, prioritizing them for release as appropriate because the PRR did nothing to modify the April 4th docket review guidance and last ensuring compliance with those What would be helpful to me as well to know exactly how that works? What in the PRR led to these conclusions? Sure. So why don't we start off with the fourth point that I mentioned, because I think that is what ties us together, which is ensuring compliance with even what the PRR provided. So what the district court found at ER 33 was that ICE's apparent failure to enforce compliance with all of these policy documents meant that there was a substantial risk on this record that the PRR was not going to instantly or even in a reasonable amount of time go into effect. ER 41, the district court found that defendants had an arc of that. I mean, there were some anecdotal points from different facilities, although most of those were quite a bit before this April document. But what is the class-wide proof that the April document has not been enforced? So it is looking at both the evidence from on the ground, which included some statements from people who have a system-wide view, advocates who receive calls from detention facilities and hear what is happening on the ground. And so I think that the best example of that is the Merton declaration at SCR 112, where she says there have been no material changes in protocols that we've seen following the April 10th guidelines. There were similar statements from other non-profits who work with people in detention, eight centers in Georgia at SCR 117, SCR 77 has three in Florida and the like. So I think there is that bottom-up evidence, which is 14 facilities across six states that covered a quarter of the entire detained population at the time. So this is a sizable chunk of the detained population. But then there's also the top-down evidence of experts in systems who were looking at what ICE had done, including DHS's own healthcare advisors, Drs. Allen and Rich, who noted the agency's struggles with ensuring compliance with its policies in the past. And I think the district court could look at the combination of that history, the contemporaneous evidence, and the fact that ICE had moved so slowly in the first couple months of the pandemic to say exactly what the district court did, which is this is not enough and not quickly enough. So I am going to impose this very limited injunction for the time being. And if circumstances change, please come back to me. The district court expressly invited the parties to return with a motion to modify or to terminate the injunction as needed. And that option remains open to the government, which is why I think that the disconnect here between the record we're talking about and everything that has happened in the seven and a half month since is so odd. I'm still troubled by the fact that we have a time disconnect and that there is a much larger record and that we're not looking at it because it wasn't around the time of this injunction. That seems to me to be artificial in the sense that the later enforcement action, as you point out, it could have been an action by the government to dissolve the injunction because it complied with it, but that wasn't what it was. And so I'm just struggling to see if there's any way that we can consider this all of a piece, i.e. look at the injunction as modified or as clarified as the injunction before us and wait till the other appeal catches up and decide the artificially segregating this out. Is there any precedent for doing that? I know we've done it before in some instances, but when there's any theoretically explicable way to do that is what I don't. So you're right. It's not for me to speculate whether the solicitor general is going to authorize the government to press ahead with the appeal that we have to consider on the go forward in the theory that we have an appeal. And there is an appeal pending in this court and subject to reasons. Sure. So that could be an option. If I can offer another option, it would be to simply follow what the court said in Melendrez versus Arpaio versus PETA versus INS to say when you have a preliminary injunction appeal, where circumstances are changing, you can just engage in a limited form of review that looks at in a fairly superficial way at what the district court did and wait for the subsequent appeal that comes up on the full record. And I think that that option is absolutely available to the court here to say there was no clear error. And I have not, not in ICE's briefs or in my friend's presentation have I heard any assertion of a clear error in the fact finding. There was no abuse of discretion. I think that is their argument. And I think the district court addressed the April 10th ERR in its discussion and said that this, you know, that it both does not solve all of the problems that have existed. And to the extent it does improve things there, ICE has not given any reason to believe that those are actually going to be implemented and enforced anymore than its March or April policies. And I think that was within the district court's discretion to determine coupled with exactly what the district court said that, you know, I recognize that this may not need to last very long and just come back to me if that's the case, that no part of that was an abuse of discretion. And I don't think the court needs to dive deep into the merits of the district court's decision here just to say that it did not err when it acted seven months ago and will return. And so as not to preclude litigation of any issues on the merits that may come up in a subsequent, in the just filed appeal. When you filed this case, I mean, maybe not you, but when this case was filed, obviously that was prior to COVID being something on our radar. And then the case was about different issues and then COVID arose and this PI was filed, but why was it appropriate to do that in the context of the case that was not otherwise about COVID? Your Honor, it was a case about the due process and Rehabilitation Act violations occurring generally with respect to at risk people in ISIS custody. And so there was no preliminary injunction filed accompanying the complaint when that was filed last August, because there was no emergency need in quite the way that there was once COVID emerged in April. And so, but this is still subsumed with, I mean, I've read the complaint, you know, substantial documents, but it's a broad document. It makes very broad based challenges. Are there any limits to the type of preliminary injunctive relief you could have sought coming out of that? Because that, that sort of, that complaint purports to put at issue health, disability, essentially a huge amount of treatment at ICE facilities nationwide. Does it then mean you're allowed to basically seek preliminary injunctive relief on any issue that sort of within that? So I think if it is fairly encompassed by that complaint, and again, it requires actually making a showing of all of the winter factors. And so this was no white burden to obtain this preliminary injunction. And the amount of evidence that was assembled in a short period of time, I think goes to show that and gave the district court what it needed to reach the I see that as just a subset of the underlying suit, which is why there were subclasses certified, not the entire class that is at issue in the underlying suit. Is it your position you can get an injunction specific to one of the 250 facilities in the course of this? So for example, could you have filed a preliminary injunction request specific to the Atalanto Detention Center? So I suppose that could have happened under the auspices of the suit. I think that would have been a rather roundabout way to, you know, by taking this very narrow challenge to the systems and practices emanating from Washington headquarters, as opposed to focusing specifically on the conditions at a given detention center. I think a separate suit would be the more direct way to do that. One of the injunction requirements is that they shall make timely custody determinations for detainees with risk factors for the latest docket review guidance. Now is that, that's because I think the docket review guidance was not mandatory. Is that right? That's right. The docket review guidance wasn't mandatory and PRR referenced it, but did not make it mandatory. There was no mandatory requirement at that point of individual custody determinations for detainees with risk factors. Correct. That did not become mandatory until the injunction issue. And again, this was not an injunction directing release. It was an injunction directing that ICE simply do what ICE itself offered up as a path forward, which was to give significant weight to risk factors in custody determinations. Can I ask, with respect to the docket review in particular, the October order tightened up what ICE had to do under that and imposed some deadlines. And what is your understanding of what, has that happened already? Or is there still some ongoing process that the injunction requires to take place in the future? So it has happened in part, but there, it has not happened consistent with the terms of the October order. So just as one example, the October order requires custody determinations to occur within a week. We're aware as of the latest information from ICE of about 1700 people who had been detained for at November 30th, who had not received any custody determination, including about just under 700, who are not even subject to mandatory detention. So there has been, I want to be very clear, there has been some compliance with this and the detained population now system-wide is about half of what it was in April. So there is a lot that has changed, but in terms of there are still um, there are still a couple thousand class members who are in detention. So this very much remains a live dispute. Right. To go back to the injunction, defendants shall promptly issue a performance standard or a supplement to the PRR defining the minimum acceptable detention conditions for detainees with those factors. That didn't exist in the, the, the PRR defined some conditions for detainees, but, but, but spoke exceedingly little with any specificity to people who have risk. So that the PRR had general pronouncements about social distancing being recommended, um, making available hands, open hand sanitizer and, and the like, but there was nothing specific to prioritizing those who were at greatest risk. And that was what Dr. Venters focused on in particular in his evaluation of the PRR was saying things just to give one, uh, one example of that, the PRR specified, for example, that high risk patients should get greater space in isolation once they are already symptomatic or once they have already tested positive. And that's, that's a good idea because they could be, they could get an even greater infection and people at high risk are also hyper spreaders who pose a greater threat to others in the facility, but that did nothing to be a greater priority to prevent them from getting infected in the first place. And that's what the district court focused on at ER 34 and 35, but Dr. Venters focused on at SCR 47 and say there are broad categories of precautions in a world in which not everybody can have perfect precautions for everything that you have to have. And that's because the people who are doing it and nothing in the PRR addressed this were just people with no training. So there's a separate question about whether the people who even identifying who has a risk factor are, are people with training and that, that was not addressed by the PRR either. And, and so, right. So it's just helpful to have the actual, not resolved. Okay. No, I just emphasize again. Sorry, if I could wrap up with one sentence, just to emphasize the, the modest nature of the injunction that the district court issued and requiring ICE to build on what it had already done at a system-wide level, which is why this case is much more like Parsons and Armstrong than it is like Walmart. And we asked the court to affirm. Thank you, your honor. I want to emphasize two points. I want to emphasize first why the court should move forward with deciding this case. And second, I want to hit some points on the PRR with respect to my friend's last statement there. This is not a modest injunction. This is an injunction that covers hundreds of ICE facilities and subjects ICE in its law enforcement, immigration enforcement capacity to extensive ongoing months long, maybe years long. It's hard to say oversight by a district court under threat of contempt. That is not a modest remedy. It rests in the injunction rests on serious errors of law. This court should resolve those errors of law. Now it is a different situation in Roman. What recalls well there, the court vacated the very particular extensive time specific measures there. I mean, if that preliminary injunction involved orders to release specific numbers of people within a certain span of time, by the time this court heard arguments months later, many more people had been released. This, however, provides an overarching sweeping district court oversight. And I think Judge Press touched a little bit on the following point, your honor, but it's a real problem. If this court, if again, Roman was an expedited appeal and we still had this court sent it back down to the district court. If this, if the government cannot get a full adequate review of a serious order like this, that's so sprawling, expansive and problematic for law enforcement and immigration enforcement purposes, it's a real problem for the government. This is erroneous and the court should review it with expedition. We shouldn't have to move to modify. There's enough to review here. And this would obviate the need to reach a lot of other issues potentially in any further appeal that the government may take on the more recent order. With respect to the PRR, your honor, I would just put possibility that the appeal is going to drop. Is that what you're telling me? I would think that if you want to personify what your problem is, that appeal personifies that this actually ended up in a much more specific set of requirements. But on the other hand, I don't really understand why at this general level you have any problem with the injunction. I mean, you'd be doing all this by now. Your honor, there's, I don't, it's hard to imagine a government agency who is conducting its law enforcement or other enforcement mechanism that wants to have extensive, complete oversight of a core part of its operations for months or years. It's not an excuse for the district court that the district judge could have ordered even broader or more problematic relief. The ICE should not be under this massively erroneous, clearly erroneous injunction. And that's the key problem, your honor. And with respect to some of the errors, I would just emphasize pages 34 to 35 of the excerpts of record are a good faulted the pre PRR response and said we didn't do it fast enough, even though we did it within weeks of the president's March 13th declaration shortly after who had made a similar pandemic related pronouncements. And then the district court faults us for lack of social distancing. This is something that's squarely addressed in the pandemic response requirements, social distancing strategies at page 67 of the government's excerpts. And similar points could be made about PPE, PPE, about folks with risk factors, screening, all these other things. Our system wide response was adequate, your honor. There's no basis for this injunction. So there are items in the record that came out after the PRR, your honor. They still suffer from the, my friend's submissions still suffer from the same flaws. They're still episodic. They're not system wide. They don't remotely show a problem with the policy. But again, this is a much easier case than Roman to just decide now because it is a systemic attack. And for many of the reasons that have been raised here, and I think some of the points that the judge breast made with respect to the very high burden of plaintiff's face, it's just something that they cannot show as a system wide constitutional, constitutional, other or other federal law violation. And I see my time is up. And thank you for that. Thank you both very much for that. Court for this session stands adjourned. Thank you.
judges: Berzon, Miller, Bress